**TUCSON ELECTRIC POWER CO., Plaintiff,**

v.

**BAILEY CONTROLS CO., Defendant.**

**No. Civ. 92–185 TUC RMB.**

United States District Court, D. Arizona.

Nov. 25, 1992.

John J. Brady, Chandler, Tullar, Udall & Redhair, Tucson, AZ, for plaintiff.

Philip H. Grant, Slutes Sakrison Grant & Pelander P.C., Tucson, AZ, Harry T. Quick, Benesch Friedlander Coplan & Aronoff, Cleveland, OH, for defendant.

## ORDER

BILBY, District Judge.

This suit for damages arises out of a boiler explosion at an electric power generating facility operated by plaintiff Tucson Electric Power Company ("TEP"). Defendant Bailey Controls Company ("Bailey") now moves to compel the joinder of TEP's insurer, Arkwright Mutual Insurance Company ("Arkwright"); on the ground that Arkwright is both a real party in interest within the meaning of Fed.R.Civ.P. 17(a) and a party to be joined if feasible as defined by Fed.R.Civ.P. 19(a).

## BACKGROUND

TEP and Bailey entered into an agreement in 1990, under which Bailey was to provide technical services for TEP on an as-needed basis. On February 19, 1991, a boiler exploded at TEP's generating plant. At the time, one of Bailey's technicians was testing or working on the ill-fated boiler. On February 13, 1992, TEP brought suit against Bailey in Pima County Superior Court, asserting causes of action sounding in both contract and tort, and alleging damages of "not less than $2,222,545." [1] Bailey subsequently removed to this Court, jurisdiction premised on diversity of parties.

The instant motion relates to Arkwright's payment of the sum of $2,222,545

---

**1.** This Court previously granted defendant's motion for partial summary judgment, ruling that, pursuant to the parties' agreement, defendant's liability herein is limited to the sum of $250,000.

*See Tucson Elec. Pwr. Co. v. Bailey Controls Co.,* No. CIV 92–185 TUC RMB, slip op. at 8, 1992 WL 430467 (Oct. 8, 1992).

to TEP pursuant to a so-called "loan receipt" agreement. Under the terms of the agreement, the sum is repayable "only in the event and to the extent that" TEP recovers damages from any third party in connection with the boiler explosion. The agreement further provides that TEP is obligated, if appropriate, to bring suit in its own name against any party who may be liable for damages. Though any such litigation is to be brought in TEP's name, the agreement provides that it will be maintained "at the expense of and under the exclusive direction and control of the said Insurance Company." As contemplated by the agreement, Arkwright both pays for and controls this litigation, though TEP is the named plaintiff.

## DISCUSSION

Defendant Bailey asserts that because Arkwright has advanced payment to TEP for the loss suffered, Arkwright is a "real party in interest" within the meaning of Fed.R.Civ.P. 17(a). Therefore, Bailey contends, Arkwright is a party to be joined if feasible under Fed.R.Civ.P. 19(a). In response, TEP argues that Arkwright is neither a real party in interest nor a party necessary to the action.

## I. REAL PARTY IN INTEREST

Rule 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Though the language at first glance seems straightforward, in fact there is no consensus among federal courts whether the rule prevents an insurer from bringing suit in the name of the insured pursuant to a loan receipt agreement. *See generally* E. Michael Johnson, Note, *The Real Party Under Rule 17(a): The Loan Receipt and Insurers' Subrogation Revisited,* 74 Minn.L.Rev. 1107 (1990) (noting conflicting and confusing state of the caselaw). In general, courts tend to

follow one of three broad approaches when confronted with this question.

The first approach flows from the Supreme Court's decision in *Luckenbach v. W.J. McCahan Sugar Refining Co.,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918), which held that payments made pursuant to a loan receipt agreement are in fact loans, and not payments of insurance. Writing for the Court, Justice Brandeis praised the loan receipt as "consonant both with the needs of commerce and the demands of justice." *Id.* at 149–51, 39 S.Ct. at 55–56. In the wake of *Luckenbach,* the majority of federal courts to have addressed the issue have held that Rule 17(a) does not prevent an insurance company from bringing suit in the name of the insured pursuant to a loan receipt agreement. *E.g., Celanese Corp. v. John Clark Indus.,* 214 F.2d 551, 556 (5th Cir.1954); *Acro Automation Systems v. Iscont Shipping Ltd.,* 706 F.Supp. 413, 422 (D.Md. 1989); *see* Note, *supra,* 74 Minn.L.Rev. at n. 60 (collecting cases). In contrast, a minority of courts, led by the D.C. Circuit, have held that allowing an insurer to sue in the name of the insured violates the express language of Rule 17(a).[2] *E.g., City Stores Co. v. Lerner Shops of District of Columbia, Inc.,* 410 F.2d 1010, 1015 (D.C.Cir.1969); *see* Note, *supra,* 74 Minn. L.Rev. at n. 60 (collecting cases). Finally, courts following the third approach look to the applicable state law in a diversity action in order to determine whether to give effect to a loan receipt agreement. *See* Note, *supra,* 74 Minn.L.Rev. at n. 22 (collecting cases).

It is somewhat unclear which approach has been adopted in this Circuit. In *McNeil Construction Co. v. Livingston State Bank,* 300 F.2d 88, 90–91 (9th Cir. 1962), the Ninth Circuit followed the *Erie*-driven third approach, upholding the district court's grant of summary judgment

---

**2.** It appears that the State of Arizona follows this second approach: "We feel that where, as here, the insured has no interest in the recovery the insurance company cannot circumvent Rule 17(a) by means of a fictitious loan agreement with the insured." *Hamman–McFarland Lumber Co. v. Arizona Equipment Rental Co.,* 16 Ariz.App. 188, 190, 492 P.2d 437 (1972) (citing *City Stores Co. v. Lerner, supra* ); *accord Northern Ins. Co. of New York v. Mabry,* 4 Ariz.App. 217, 219, 419 P.2d 347 (1966) (recognizing that where insured has been paid in full, insurer is the real party in interest).

under Rule 17(a), on the ground that under Montana law, the insurer, not the insured, was the real party in interest. But more recently, in *Glacier General Assurance Co. v. G. Gordon Symons Co.*, 631 F.2d 131, 134 (9th Cir.1980), the Ninth Circuit, without discussing *McNeil*, implicitly questioned whether state law is of any practical significance in this context, stating that "determination of the real party in interest from the underlying legal relationships is a matter of federal law." *Id.* at 134; *cf. Hamman–McFarland Lumber Co. v. Arizona Equipment Rental Co.*, 16 Ariz.App. 188, 190, 492 P.2d 437 (1972) (treating issue as procedural and not substantive in nature).

■ Thus it is clear that the substantive issue of law raised by defendant's motion to compel joinder involves a difficult *Erie* question, and were this Court to follow *Glacier* rather than *McFarland*, an equally challenging question of first impression in this Circuit regarding federal common law. But before reaching these issues, the Court first must resolve a threshold procedural question: whether Rule 17(a) confers upon a district court independent authority to compel the joinder of a party found to be a real party in interest. Appropriately enough, there is a split of authority on this question. Wright, Miller, & Kane [3] conclude that a Rule 17(a) objection should be raised either in the answer to the complaint or through a motion to dismiss under Rule 12(b).[4] Charles Alan Wright et al., Federal Practice & Procedure § 1554 (2d ed. 1990). Notwithstanding this interpretation, some federal courts have gone ahead and compelled joinder pursuant to Rule 17(a), *e.g., City Stores, supra*, 410 F.2d at 1015. The Ninth Circuit, however, has explicitly rejected the proposition that Rule 17(a) has any independent application where joinder is concerned: "Fed.R.Civ.P. 17(a) governs only the right of U–Haul to bring the suit. It is Fed.R.Civ.P. 19 that tells us whether the appropriate parties are before the court." *U–Haul Internat'l v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir.1986); *see Glacier, supra*, 631 F.2d at 134 ("the ability to force joinder of a nonparty in a diversity action is a matter of federal law governed by Fed.R.Civ.P. 19"). Therefore, the only issue properly before the court on defendant's motion to compel joinder is whether Arkwright is a party to be joined if feasible under Rule 19(a).

## II. COMPULSORY JOINDER

■ In addition to asserting that Arkwright is a real party in interest, Bailey contends that Arkwright should be compulsorily joined under Rule 19(a). The starting point for the analysis, of course, is the text of the Rule:

A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Defendant Bailey, trying to fit the facts within the framework of the rule, makes vague allusions regarding the prejudice it will suffer if Arkwright is not joined. The alleged prejudice seems to boil down to the assertion that a Tucson jury will unfairly favor TEP in order to prevent future electricity rate increases. Rule 19(a), however, makes no allowance for this sort of prejudice; justified or not, Bailey's concern simply is not relevant to this motion.

Moreover, it is apparent that Bailey faces none of the sort of prejudice that Rule

---

**3.** The Wright, Miller, and Kane treatise often is described as the "Bible" of federal civil procedure. Perhaps this explains plaintiff's repeated reference to "Wright, Miller, & *Cain*"—for surely this is a typographical error of biblical proportion.

**4.** In *McNeil*, the Ninth Circuit upheld a grant of summary judgment based upon a Rule 17(a) objection. *See McNeil, supra*, 300 F.2d at 91.

19(a) *is* intended to prevent. Arkwright's rights derive entirely from those of the named plaintiff; therefore, complete relief can be granted in Arkwright's absence. And under the loan receipt agreement, Arkwright's interests are well protected; disposition of the action in Arkwright's absence will not impair or impede Arkwright's ability to protect those interests. Finally, Arkwright, as a nonparty in control of the litigation, will be precluded from relitigating TEP's claims. *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Therefore, disposition of the action in Arkwright's absence will not leave defendant subject to a risk of incurring multiple or inconsistent obligations. *See Acro Automation Systems, supra*, 706 F.Supp. at 420.

Consideration of the foregoing factors compels the conclusion that Arkwright is not a party to be joined if feasible under Rule 19(a): This conclusion accords with analogous Ninth Circuit caselaw. *See Glacier, supra*, 631 F.2d at 134–35 (insurer who has partially reimbursed insured's loss held not to be a necessary party). Accordingly, IT IS HEREBY ORDERED that defendant's motion to compel joinder of party plaintiff be and is DENIED.

